AMOS D. SHEPARD

*v.*

WADE BREWER *et al.*

1. HOMESTEAD—*right of infants in, lost by the abandonment of parent.* Although infant children have rights in the homestead, they are necessarily under the control of their parents during the joint lives of the latter; and as the mother becomes the head of the family upon the death of the father, her abandonment of the homestead will deprive such children of their homestead right.

2. SAME—*facts showing an abandonment of.* Where the widow of one who had mortgaged his homestead without releasing the right, some time after the death of her husband, went to Nevada territory, leaving the premises in charge of a son-in-law to rent for her infant children whom she left behind; was there married, and lived with her husband for eight months in Nevada, when she returned, and in about two years afterwards executed a quit claim deed to her son-in-law, which was inoperative to pass title because her husband had not joined in its execution, and the grantee took possession and made improvements on the premises exceeding the original value of the property: *Held,* that while her deed was invalid for the reason stated, yet its execution taken in connection with the other facts showed a clear intention to abandon the homestead, and must be held with the other facts to constitute an abandonment of it.

3. The homestead right will be lost by a voluntary abandonment without an *animus revertendi.*

APPEAL from the Circuit Court of La Salle county; the Hon. CHARLES H. GILMAN, Judge, presiding.

Messrs. ELDRIDGE & LEWIS, for the appellants.

Messrs. DICKEY, BOYLE & RICKOLSON, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in equity, brought by Shepard, the appellant, to foreclose two mortgages upon a lot in the village of Leland, in La Salle county, executed by William H. Blair and Sarah Blair, his wife, one on the 12th of February, 1858,

384     SHEPARD *v.* BREWER *et al.*     [Sept. T.,

Opinion of the Court.

to James L. Chapman & Co., to secure the payment of $81; the other on the 20th of January, 1860, to William O. Craig, to secure the payment of $112. Shepard is the assignee of the mortgages. The mortgaged premises were of the value of about $400, as the proof shows. The homestead right was not released in either mortgage. That right is set up in resistance of the foreclosure; and the question presented on the record is, whether there has been an abandonment of the homestead.

The mortgagor, Blair, died in 1860, leaving Sarah Blair, his widow, and several children, three of whom were infants at the time of the filing of this bill, February 23, 1870. The evidence shows that the widow and her family did not reside on the property after 1860. Shepard, who married one of the daughters, lived on the premises several months in 1864 or 1865.

In 1863, Mrs. Blair, the widow, went to Nevada territory, leaving her children behind, and leaving the premises in charge of a son-in-law to rent them for the support of her infant children. In 1864, Mrs. Blair married one Wade Brewer in Nevada territory, and according to her own testimony lived with him there eight months, and no longer, during which time they kept house. In 1864, she returned to Illinois. On the 16th of June, 1866, she, together with her married daughter, Elnora Richolson, executed a quit claim deed of the premises to Shepard in consideration of one hundred dollars paid by him. Soon after, Mrs. Brewer left for Colorado territory, where she remained nearly two years, and then returned from Colorado to Illinois in 1868. After the execution of the quit claim deed, Shepard took possession of the premises, and put improvements thereon to more than the original value of the property, and also bought in the aforesaid mortgages.

A question is made as to the character of the transaction between Mrs. Brewer and Shepard, in the execution of the quit claim deed by her, and his payment of $100.

It is claimed on her part to have been but a loan of $100 from Shepard and that the deed was given only as security for its repayment; while he claims that it was an absolute purchase of all her interest in the property for the sum of $100, which he paid for it.

In proof of the transaction being a loan, the facts are relied upon that Mrs. Brewer executed a lease of the premises to Shepard, bearing date, June 1, 1866, for ten years from that time, for the rent of $100, and that she remitted from Colorado to Shepard $90.

The evidence satisfactorily explains this lease to us as being but a mere form—that it was resorted to, to disguise the transaction from the mortgagees holding these two outstanding mortgages, and create the belief on their part that the homestead right was still retained, and thereby induce them to refrain from foreclosing their mortgages. And we think from the evidence the $90 was remitted, not toward the payment of any loan, but for the support of the infant daughter of Mrs. Brewer, who was then living with Shepard. In view of all the proof, we are satisfied that Shepard purchased all the interest of Mrs. Brewer in the property for the sum of $100, and that she executed to him her quit claim deed therefor.

Being a married woman at the time, the deed was invalid for the purpose of passing title, yet its execution, taken in connection with the other evidence, shows a clear intention to abandon the homestead, and must be held with the other facts to constitute an abandonment of it.

The homestead right is lost by a voluntary abandonment without the *animus revertendi*.

In *Brown* v. *Coon*, 36 Ill. 243, this court held that where the homestead is conveyed, without a release of the homestead right under the statute, and actual possession give to the grantee by the voluntary withdrawal of the husband and wife, the homestead, as to such grantee, is abandoned; and it was also there held that, although the infant children have rights in the homestead, these rights must necessarily be under the control of

25—65TH ILL.

the parents during the joint lives of the latter; and in *Wright* v. *Dunning*, 46 id. 271, and *Buck* v. *Conlogue*, 49. id. 391, it was held that where, upon the death of the father, the mother becomes the head of the family, she, by abandoning the homestead, would deprive these children of the homestead right.

The decree must be reversed and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*