### A. Q. GOODIN ET AL. *v.* MARY E. GOODIN ET AL.

[Abstract Kentucky Law Reporter, Vol. 3—249.]

**Statute of Limitations.**

Where a husband was a tenant by the curtesy no action could be maintained for the recovery of the land until his death, and where his death occurred in 1877 the statute of limitations against such an action then begins to run.

**Proof Necessary to Establish a Trust in Land.**

Where it is probable a grantor desired to intrust his son-in-law with the title to land and the use of it, and a deed is thus made with knowledge and consent of the grantor; and the son-in-law is in possession under the deed for nearly a half a century, the proof of mere declarations made by the grantor at the time, in the absence of an allegation of fraud or mistake, is not sufficient to establish a trust.

**Value of Written Evidence.**

In a suit by children to show that their father held lands as trustee only for their mother, who was the real owner of the land, and where the conveyance shows the father to have been a purchaser of the land, and that he paid its full value and has held the legal title for more than forty years, the mere recollection of parties as to what took place forty years before should not be permitted to destroy the written evidence of title.

### APPEAL FROM LARUE CIRCUIT COURT.

September 14, 1881.

OPINION BY JUDGE PRYOR:

Albert Goodin intermarried with Fannie Vernon in the year 1832.   She died in 1844, leaving five children surviving her. He again married, and had by his last wife six children, and died

in the year 1877. He left a large estate in land and personalty. Three of his children by his first wife survived him, and the six children by his last wife.

This action was instituted for the purpose of dividing the real estate between his children, and of allotting to the widow her dower. Three hundred acres of the land left by the father is claimed in this action by the children of the first wife, they alleging that this much of the land was an advancement to their mother by her father, Anthony Vernon, and was held in trust for their mother by their father, Albert Goodin. The children by the last wife say that Anthony Vernon gave this three hundred acres of land to Betsey Bledin, one of his daughters, and conveyed it to her and her husband in the year 1834, and that in June, 1834, their father, Albert Goodin, purchased the land of Bledin and wife for the sum of $600, and obtained a conveyance. The children by the first wife admit the conveyance to Bledin and wife, and by them to Albert Goodin, their father, but allege that Bledin and wife were never in possession of the land for the reason that they preferred to take other land, and the same was then given to their mother, Fannie Vernon, and a deed made by her father to Bledin and wife, and by them to Albert Goodin at the instance of the donor, Anthony Vernon, and in his presence, and that both conveyances were acknowledged on the same day.

The children of the last wife also rely on the statute of limitations, but in response to this defense it is maintained that their father was tenant by the curtesy, and no action could have been maintained by them for the recovery of the land until his death, which took place in the year 1877. In this position they are correct, for if it was the land of the mother the husband was tenant by the curtesy, and his holding was not adverse to the claim of the children.

The principal and only question is as to the existence of the alleged trust. The father entered into the possession of this land in the year 1834, under an absolute conveyance from Bledin and wife to him, upon the alleged consideration of $600 by him paid to the grantors. He remained in possession under this conveyance from that time until his death, a period of near forty-three years, and now a trust is attempted to be created upon the idea that it was the wife's estate given her by her father, and that he

was only tenant by the curtesy. There is no testimony of any holding on the part of Albert Goodin for his wife, except the proof of verbal statements by him that are unsatisfactory. Taking the theory of appellants to be true, their grandfather caused the conveyance to be made to their father without any express trust, and no inducements were offered nor fraud practiced by the husband and son-in-law to obtain the conveyance; and in such a case we see no reason why a trust should be declared, or the rights of the husband limited to a life estate. The father, if he chooses, may give or convey the land to the son-in-law, and while he obtains it by reason of the marriage, this affords no sufficient reason for the chancellor to regard it as trust property and to cancel the conveyance by restricting the rights of the husband. The conveyances made by Anthony Vernon to his other daughters convey the land to John Kennedy and Lucinda, his wife, and to John Bledin and Betsey, his wife, etc. Now the husband and wife in each conveyance hold jointly, and the mere fact that the conveyance was made by the father of the married woman, without any other consideration than love and affection, will not deprive the husband of his joint interest or authorize a cancellation of the deed.

The father of Mrs. Goodin, the first wife, consented that the conveyance should be made in this case to the husband, and was present when it was made and acknowledged, and, assuming the facts as relied on by appellants to be true, there is no reason for depriving his children by his last wife of their interest in the land.

Cases frequently occur where commissioners, dividing lands to which feme coverts are entitled by inheritance, have conveyed the lands to both husband and wife, in which cases it has been held the commissioner had no right to deprive the feme of her inheritance without her consent; but where the father or donor undertakes to make the conveyance in that way, in the absence of some fraud or mistake in its execution, the aid of the chancellor can not be invoked to cancel the deed or declare the existence of a trust.

In the case referred to by counsel, *Samuel v. Samuel's Admr.*, 4 B. Mon. (Ky.) 245, the will of the testator authorized a sale and conveyance of the real estate and a distribution of the pro-

ceeds between his heirs. The husband in that case received a conveyance of the land on no other consideration than the interest of the wife, and it was held that he was a trustee for the wife. If, however, the father or testator had conveyed the land to the husband of his daughter without any trust declared, the mere fact that he was the son-in-law, although in the absence of any valuable consideration, would not deprive the husband of the real estate. It may be that the donor intended and desired to intrust the son-in-law with the title and use of the land, and when a deed is thus made with the knowledge and consent of the parent, and the husband is in the possession under the deed for near half a century, the proof of mere declarations, made by the grantor at the time, in the absence of an allegation of fraud or mistake, is not sufficient to establish a trust; and even when the proper allegations are made for the purpose of reforming the deed the proof should be satisfactory to the right to relief before the chancellor would grant it. In this case, while the facts conduce to show that the land was an advancement to the daughter, still there is conflicting testimony tending to show that the purchase was made by Albert Goodin, and this testimony is sustained by the conveyance itself, acknowledging a consideration of $600 in hand paid by him.

Holding, as Goodin does, under such a conveyance after the lapse of forty years, the chancellor would not only hesitate to establish a trust upon the proof in this case, but should deny the relief sought. The conveyance shows the father of these parties to have been a purchaser of the land, and that he paid its full value, and the mere recollection of parties as to what took place forty years before they are called to testify should not be permitted to destroy the written evidence of title, and, if it could be deemed sufficient, it further appears that the conveyance was made by the consent of the father of Mrs. Goodin and acknowledged in his presence, and the fact that it may be charged as an advancement to the wife can not affect the question involved.

The chancellor acted properly in dismissing the petition and establishing perfect equality in the division between the children of the common parent. *Elliott v. Nichols,* 4 Bush (Ky.) 502; *Croan*

*v. Joyce,* 3 Bush (Ky.) 454; *Thompson v. Peebles' Heirs,* 6 Dana (Ky.) 387; *Babbit v. Scroggin,* 1 Duv. (Ky.) 272.

Judgment *affirmed.*

*W. H. Chelf, William Lindsay, J. W. Tevyman,* for appellants.

*T. A. Robertson,* for appellees.